UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA HEALTH CARE SELF INSURANCE FUND** | **CIVIL ACTION NO. 12-766** |
| | **JUDGE JOHN W. deGRAVELLES** |
| **VERSUS** | **MAG. JUDGE RICHARD L. BOURGEOIS, JR.** |
| **THE UNITED STATES OF AMERICA** | **JURY TRIAL** |

**WRITTEN REASONS FOR DENIAL OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter came before the Court on the Motion for Partial Summary Judgment (R. Doc. 44) filed by plaintiff, Louisiana Health Care Self Insurance Fund ("Taxpayer"). Defendant the United States of America ("IRS") opposed the motion. After the Court ordered supplemental briefing,[1] oral argument was heard on September 23, 2014.

On September 29, 2014, the Court denied Taxpayer's motion and stated that written reasons would follow. For reasons set forth below, Taxpayer's motion was denied because a genuine issue of material fact existed as to whether, for purposes of 26 U.S.C. § 832(c)(11), the Taxpayer "paid or declared to policyholders … dividends and similar distributions."

**I.    Factual Background**

The IRS "does not dispute the facts contained in [Taxpayer's] statement of undisputed facts with one exception." (United States of America's Response to Plaintiff's Statement of Undisputed Material Facts, R. Doc. 48-1, p. 1). The sole fact disputed is whether Taxpayer "declared a *dividend* for each of the taxable years at issue." (Id.). Thus, the parties agree to the following.

---

[1] In this supplemental briefing, the IRS conceded that the all-events test and economic performance rule did not apply in this case. (R. Doc. 67).

1

This is a tax refund case. Taxpayer is a workers' compensation self-insurers' fund formed under the laws of the state of Louisiana. (Taxpayer's Local Rule 56.1 Statement of Undisputed Material Facts, R.Doc. 44-2, p. 1). It is engaged, and at all times relevant to this action was engaged, in the business of providing workers compensation coverage to its member employers. (Id.).[2]

This case involves Taxpayer's 2002, 2003, and 2004 tax returns. In those years, Taxpayer claimed certain deductions for "Dividends to Policyholders." (Id. at p. 2). The IRS later undertook an audit of those years and raised an issue with the deductibility of those dividends under 26 U.S.C. § 832(c)(11). (Id.). The IRS issued a Notice of Proposed Assessment ("30 Day Letter") to Taxpayer proposing changes to Taxpayer's tax liability for the years 2002 through 2004. (Id.). Along with the 30 Day Letter, the IRS issued Form 4549-A to Taxpayer showing a proposed increase in taxable income equal to the amount of the dividends deducted on Taxpayer's tax returns. (Id.)

On June 9, 2010, Taxpayer filed a protest letter with the IRS Appeals Office in New Orleans, Louisiana, protesting the amount of the proposed assessment of claimed income tax liability set forth in the 30 Day Letter and Form 4549-A. (Id.). The parties conducted conferences and participated in discussions regarding these issues, but they were unable to come to an agreement. (Id.).

---

[2] At oral argument and in his brief, counsel for Taxpayer explained the many differences between self-insurance funds ("SIFs") like Taxpayer and ordinary property and casualty companies. SIFs are regulated under Title 23, the Worker's Compensation Statutes, while property and casualty insurers are regulated by the Insurance Code of Title 22. Louisiana law also does not require SIFS to have minimum capital or surplus as is required of insurance companies licensed under Title 22 of the Louisiana Revised Statutes. Each member of the group also becomes jointly and severally liable for the workers' compensation liabilities of each other member of the group. (Taxpayer's Statement of Uncontested Facts, R. Doc. 48-1, p. 2). However, Taxpayer admits that "it is taxed as an insurance company under federal law" and "filed Form 1120-PC, which is the tax form filed by property and casualty insurance companies."

The IRS Appeals Office then issued a Notice of Deficiency ("Statutory Notice") to Taxpayer dated January 6, 2012 determining that Taxpayer had a deficiency in its tax account. (Id.). The total amount of tax deficiencies and penalties owed was $2,751,668.40 (Id. at p. 4). The alleged deficiencies related solely to deductions from Taxpayer's income for member employer dividends declared for the calendar years 2002 through 2004, and the deficiencies arose as a result of the IRS's recalculation of Taxpayer's taxable income for those years. (Id.) No other items shown on the 2002, 2003, and 2004 returns were disputed by the IRS. (Id.).

On March 30, 2012, Taxpayer made payment under protest to the IRS in the amount of $2,751,668.40 for all alleged tax deficiencies and penalties assessed against it pursuant to the January 6, 2012, Statutory Notice. (Id.)

On May 9, 2012, Taxpayer filed amended Forms 1120-PC for the tax years of 2002 through 2004 seeking a claim for refund of federal income tax pursuant to § 6402 of the Internal Revenue Code for each of the above years in the total amount of $2,751,668.40. The IRS failed to allow, or even take action on, this refund claim within six months of filing. Accordingly, pursuant to § 6532 of the Internal Revenue Code, the IRS is deemed to have disallowed the refund claim. The instant action ensued.

## II. Discussion

### A. Summary Judgment Standard

A motion for summary judgment shall be granted if the [depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other material] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) (en banc).

Here, Taxpayer has the burden of proof at trial. *See Battelstein v. Internal Revenue Service*, 631 F.2d 1182, 1185 (5th Cir. 1980) (citations omitted). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the Court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id*. The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Little*, 37 F.3d at 1075.

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the Court is required to render the judgment prayed for. Fed.R.Civ.P. 56(a); *Celotex Corp*., 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the Court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*.

**B. Analysis**

"[T]ax deductions are matters of legislative grace and must be narrowly construed. The taxpayer bears the burden of proving his entitlement to a particular deduction. Equity cannot supply a deduction when the Code does not grant one." *Battelstein v. Internal Revenue Service*, 631 F.2d 1182, 1185 (5th Cir. 1980).

The sole issue remaining for this Court is whether Taxpayer "paid or declared to policyholders … dividends and similar distributions" under 26 U.S.C. § 832(c)(11). There seems to be no dispute between the parties as to what actions the Taxpayer took. The sole issue is

whether these actions constituted a "dividend" or "similar distribution." Determining whether something is a "dividend" or "similar distribution" appears to be a mixed question of law and fact. *See* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2589 (3d ed. 2014).

Here, the Court believes that the IRS has presented sufficient evidence to at least produce a reasonable dispute as to the application of the facts to the law. As the Taxpayer conceded at oral argument, determining what a dividend is is a difficult task. 26 U.S.C. § 832(c)(11) provides no meaningful definition of "dividend and similar distribution." 26 U.S.C. § 834, which provides certain definitions for the part containing section 832, states in part:

> (e) Definitions.--For purposes of <u>this part</u> [i.e., Part II, Other Insurance Companies"]—
>
> (2) Dividends to policyholders.--The term "dividends to policyholders" means *dividends and similar distributions paid or declared to policyholders*. For purposes of the preceding sentence, the term "paid or declared" shall be construed according to the method regularly employed in keeping the books of the insurance company

(emphasis added). Thus, "Dividends to policyholders" means "dividends and similar distributions paid or declared to policyholders." This definition is cryptic and circular.

Some treatises refer to a "dividend" as simply a transfer of funds to shareholders. For instance, Louisiana doctrine explains that "'The term dividend is not defined by statute but is ordinarily considered as a distribution of corporate earnings and profits to shareholders." Glenn G. Morris and Wendell H. Holmes, 7 La. Civ. L. Treatise, Business Organizations § 25.01 (June 2014). Moreover, *Fletcher Cyclopedia of the Law of Corporations* confirms the same information. This treatise provides:

> "This division or distribution of corporate profits to the shareholders has been called a "dividend." State corporation statutes generally do not define the term "dividend." The Revised Model Business Corporation Act refers to dividends as a

> type of distribution to shareholders. A "distribution" is defined as a direct or indirect transfer of money or other property (except its own shares) or incurrence of indebtedness by a corporation to or for the benefit of any of its shareholders in respect of any of its shares, which may include a declaration or payment of a dividend. Some state statutes contain specific dividend provisions but do not otherwise define the term "dividend."

11 *Fletcher Cyclopedia of the Law of Corporations* § 5318 (Sept. 2014). Thus, dividends seem to merely be any sort of distribution to shareholders, without any of the distinctions that the IRS would seem to want to impose.

Taxpayer has cited to case law suggesting that it did in fact declare dividends. For instance, while the IRS is correct that, in *Bituminous Casualty Corp. v. Comm'r*, 57 T.C. 58 (1971), the issue was not whether a dividend had been declared, the Court did address the regulations governing § 832(c)(11). The current version of such regulation is 26 C.F.R. § 1.822–12(a), which provides that "dividends to policyholders" means "dividends and similar distributions paid or declared to policyholders" and includes "amounts returned to policyholders where the amount is not fixed in the insurance contract but depends upon the experience of the company or the discretion of the management." Thus, as *Bituminous* explains, deductions are based on the declaration rather than the payment, and deductions can be made on "reasonably accurate estimates." *Id.* at 85. Further, in finding dividends properly declared, the *Bituminous* court emphasized the fact that the obligation to pay the dividends was a "commitment … made to policyholders at the time the policies were written and was expressed in advance resolutions declaring such dividends." *Id.* "Pursuant to the resolutions, a reasonable estimate of the amount of such obligation was at all times reflected as a liability" on the taxpayer's Annual Statement. *Id.*

In *Commercial Fishermen's Inter-Insurance Exchange v. C.I.R.*, 38 T.C. 915, 931 (T.C. 1962), the Court interpreted § 832(c)(11) and explained: "To constitute a valid declaration, the

resolution must by its terms create a binding and enforceable obligation on the part of the corporation to pay." *Id.* at 931 (citations omitted). In sustaining the petitioner with respect to deductions of the dividends declared, the Court concluded, "upon declaration of the earnings as dividends petitioner became indebted in the amount thereof, except as to the loss retentions, to the subscribers … All indications are that both the subscriber and petitioner recognized the amounts of the contributions as true obligations of petitioner to the individual prescriber." *Id.* at 933.

The 1996 Field Service Advice Memorandum (February 20, 1996), 1996 FSA LEXIS 575,[3] reviewed numerous cases and other tax sources and summarized as follows:

> insurance companies are allowed a deduction for policyholder dividends; such deduction is not subject to the all events test but is allowed for a 'reasonably accurate estimate'; **the deduction is allowed in the year declared, even though payment is to be made later; the declaration need not be for a specific amount, as long as there is a fixed formula**; and if state approval is required [which, according to LHCSIF, it isn't here], the deduction is not allowed until the year of approval."

The FSA Memorandum also references a number of private rulings from the IRS. In almost each of these, dividends declared are deductible in the year declared "provided the dividend declaration by its terms creates a binding and enforceable unconditional obligation." *See, e.g.,* PLR 8314019, December 23, 1982

Finally, the Taxpayer has pointed to case law showing that the timing of payment or even the fact that under some set of circumstances payment might not be made at all, does not affect the amount of the liability or of its deductibility upon declaration. *E.g.*, *United States v. Hughes Prop.*, 476 U.S. 593 (1986).

---

[3] "Courts have said that, while letter rulings have no precedential value, they do reveal the interpretation of the statute by the agency charged with responsibility for administering the tax laws, and so provide evidence of the proper construction of the statute." 1 Casey Fed. Tax Prac. § 1:35.60 (citations omitted).

7

*Bitumous, Commercial*, the 1996 Field Service Advice Memorandum, the IRS private rulings, and *Hughes* seem to stand for the proposition that dividends need not be in fixed amounts as long as they are reasonably determinable, that dividends must be binding and enforceable obligations,[4] and that the dividends need not be paid in the year declared.

All of this seems to support the conclusion that the Taxpayer did in fact declare dividends. Taxpayer's by-laws require that, after the payment of claims and expenses, and after provision has been made for open claims, the Board set aside excess funds for a surplus, and "any remaining amount of such excess funds shall be distributed to members in such manner as the BOARD shall deem equitable." (R.Doc. 44-2, p.5). In each of the years at issue, the Board passed a resolution "stating that revenues from all sources for the year ending December 31, 2002[, 2003, and 2004], in excess of the expenses of the Fund, claims, claim expenses, and a provision for claims incurred but not reported shall be distributed to the eligible Members in such manner as the Board shall deem equitable." (Id.). The annual financial statements were used to determine the actual dollar amount of revenues over expenses and the actual amount of the dividend previously declared, and the dividends declared are recorded in the annual financial statements as a liability. (Id. at p.5-6). All of this seems to coincide with the above case law.

---

[4] Taxpayer is correct that dividends are in fact binding obligations on the Board under state law. "Although [Louisiana law] contains no express provisions on the issue, a long line of jurisprudence has recognized that the declaration of a dividend creates a debtor-creditor relationship between the corporation and shareholder which may be enforced by suit. Accordingly, once declared the dividend may not be subsequently revoked by the board." Glenn G. Morris and Wendell H. Holmes, 7 La. Civ. L. Treatise, Business Organizations § 25.03 (June 2014). See also James S. Holliday, Jr. and Rick J. Norman, 1 La. Prac. Corp. § 11:9 (2013-2014 ed.)("The declaration of a dividend creates a relation of debtor and creditor between the corporation and its shareholders."); 11 *Fletcher Cyclopedia of the Law of Corporations* § 5322 (Sept. 2014) ("After a dividend has been declared by the directors, it becomes a corporate debt owed to the shareholders in proportion to their share or interest in the corporation. If the corporation refuses to pay a declared dividend, the shareholders may sue to recover the unpaid dividend."). But is this circular to the issue at hand? This merely means that a dividend, once declared, is binding; it does not answer whether a dividend is in fact a dividend in the first place.

Against all of this, the IRS claims that, according to its expert, Taxpayer's board resolutions do not constitute "dividends" or "similar distributions." The IRS's position is supported by its expert, Edward W. Buttner, IV,[5] who applies general accounting principles. He urges that the amounts deemed as dividends were not reasonably accurate estimates but rather contingent liabilities. In addition, the IRS complains that certain actions taken by the Board of Directors after the declarations prove that the "dividends" were in fact a "surplus." Those actions include the Board's payment of other external liabilities before paying the dividends. According to the IRS's expert, "If you declare it, you pay it." The IRS then points to unpaid balances for three years of dividends.

Further, the IRS made an issue of the fact that Taxpayer paid its dividends years after they were declared.[6] Finally, although not discussed at oral argument, Buttner's expert report also takes issue with the fact that policyholders were not notified of the nature, timing, or extent of the dividend, as they should have been.

The Court finds that there are sufficient factual issues in this mixed question of law and fact to make summary judgment inappropriate.

---

[5] The Court has deferred ruling on the Taxpayer's Motion in Limine to Exclude Testimony and Report of Edward W. Buttner, IV (R.Doc. 45) until the time of trial. See R.Doc. 88.

[6] The IRS vacillated somewhat on this issue at oral argument. At first, the IRS said this was definitive proof that there were no dividends. Then, the IRS conceded that there was no statute, regulation, or case law requiring payment in a certain time. Finally, the IRS argued that timeliness is an indicia that the Board would use the money to take certain actions after the fact, thereby connecting timing argument with its second argument about post-declaration actions. The IRS does not reconcile the timing issue with the 1996 Field Service Advice Memorandum, the IRS private rulings, and *Hughes*.

### III. Conclusion

For the above reasons, the Court denies Louisiana Health Care Self Insurance Fund's Motion for Partial Summary Judgment (See R.Doc. 44 and 87).

Signed in Baton Rouge, Louisiana, this 20th day of October, 2014.

_____
**JOHN W. deGRAVELLES, JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**